UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER M. WALLACE,

                Plaintiff,

     v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

CASE NO. C16-01345BHS

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

## I. BASIC DATA

Type of Benefits Sought:

     (  ) Disability Insurance

     (X) Supplemental Security Income

Plaintiff's:

     Sex: Male

     Age: 19 at application date

Principal Disability Alleged by Plaintiff: Crohn's disease

Disability Allegedly Began: August 1, 2010

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Court directs the clerk to update the docket, and all future filings by the parties should reflect this change.

Principal Previous Work Experience: None

Education Level Achieved by Plaintiff: GED

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ Glenn G. Meyers:

Date of Hearing: January 19, 2016; hearing transcript AR 665-702

Date of Decision: May 24, 2016

Appears in Record at: AR 639-64

Summary of Decision:

> The claimant has not engaged in substantial gainful activity since September 30, 2011, the application date.  The claimant has the following severe impairments: Crohn's colitis, epilepsy, rheumatoid arthritis, chronic pain disorder, and cannabis abuse.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a) with some exceptions.  With his upper extremities, the claimant can engage in frequent reaching, handling, fingering, and feeling.  He can perform no squatting, stooping, crouching, crawling, kneeling, balancing, driving, or climbing stairs and ramps, and can have no exposure to temperature extremes, working at heights, or working in close proximity to hazardous conditions.  He will have six unscheduled absences per year and be 10% less productive than the average worker in the workplace.

> The claimant has no past relevant work.  Considering the claimant's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that the claimant can perform.  Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since September 30, 2011, the date the application was filed.

Appeals Council: Did not assume jurisdiction

1

**III. PROCEDURAL HISTORY—THIS COURT**

2

Jurisdiction based upon: 42 U.S.C. § 405(g)

3

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

4

**IV. STANDARD OF REVIEW**

5

    Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

6

denial of Social Security benefits when the ALJ's findings are based on legal error or not

7

supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

8

1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than

9

a preponderance, and is such relevant evidence as a reasonable mind might accept as

10

adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

11

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for

12

determining credibility, resolving conflicts in medical testimony, and resolving any other

13

ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

14

While the Court is required to examine the record as a whole, it may neither reweigh the

15

evidence nor substitute its judgment for that of the ALJ.  *See Thomas v. Barnhart*, 278

16

F.3d 947, 954 (9th Cir. 2002).  "Where the evidence is susceptible to more than one

17

rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

18

must be upheld." *Id.*

19

**V. EVALUATING DISABILITY**

20

    The claimant, Christopher M. Wallace ("Wallace"), bears the burden of proving

21

that he is disabled within the meaning of the Social Security Act ("Act").  *Meanel v.*

22

*Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to

1   engage in any substantial gainful activity" due to a physical or mental impairment which

2   has lasted, or is expected to last, for a continuous period of not less than twelve months.

3   42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).  A claimant is disabled under the Act only if his

4   impairments are of such severity that he is unable to do his previous work, and cannot,

5   considering his age, education, and work experience, engage in any other substantial

6   gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also*

7   *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

8          The Commissioner has established a five-step sequential evaluation process for

9   determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R.

10  § 416.920.  The claimant bears the burden of proof during steps one through four.

11  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five,

12  the burden shifts to the Commissioner.  *Id.*

13                           **VI. ISSUES ON APPEAL**

14         1.     Did the ALJ err in assessing Wallace's severe impairments?

15         2.     Did the ALJ err in assessing the medical evidence in the record?

16         3.     Did the ALJ err in determining that Wallace could perform other work at
                  step five?

17                              **VII. DISCUSSION**

18         Wallace appeals the Commissioner's decision denying him disability benefits,

19  arguing that the ALJ committed several errors requiring reversal.  Dkt. 15.  The Court

20  addresses the alleged errors in turn.

21

22

ORDER - 4

**A.      Severe Impairments**

Wallace argues that the ALJ erred by failing to find several of his impairments to be severe at step two of the sequential evaluation process.  *See id*. at 3-13.  The Court does not find any harmful error.

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe."  20 C.F.R. § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities.  20 C.F.R. § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856, at *3.  The claimant has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The step-two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims.  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An ALJ must still consider all medically determinable impairments, not just those determined to be severe, when assessing a claimant's RFC.  *See* SSR 96-8p, 1996 WL 374184, at *2.  Therefore, when an ALJ finds in a claimant's favor at step two, any error in failing to determine other impairments to be severe is harmless so long as the ALJ considered the limitations stemming from those impairments throughout the remainder of the analysis.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104,

1   1115 (9th Cir. 2012) (finding that an ALJ's error is harmless when it is inconsequential to

2   the ultimate disability determination).

3          Here, the ALJ found in favor of Wallace at step two, determining that he had

4   several severe impairments.  *See* AR 644.  Wallace argues that the ALJ erred by failing to

5   find his skin condition to be a severe impairment.  *See* Dkt. 15 at 3-5.  The ALJ found

6   that Wallace's skin condition did not cause any significant limitation in his ability to

7   perform basic, work-related activities for a continuous 12-month period.  *See* AR 645.

8   Wallace identifies various diagnoses and treatment but does not identify any specific

9   limitations resulting from his skin condition that affected his workplace functioning and

10  should have been included in the RFC.  *See id.*  Therefore, Wallace does not meet his

11  burden of showing harmful error in the ALJ's assessment of Wallace's RFC and resulting

12  step-five finding.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The

13  burden is on the party claiming error to demonstrate not only the error, but also that it

14  affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing

15  *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)).

16         Wallace instead argues that the ALJ's error in failing to find Wallace's skin

17  condition to be a severe impairment was harmful because the ALJ did not analyze

18  whether the impairment met a listing at step three.  *See* Dkt. 15 at 3-5.  Without

19  identifying a specific listing that he meets, Wallace argues that the medical record

20  contains evidence that he had persistent lesions that fall within the category of skin

21  disorders in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00.  *See id.*  However, that category

22  of listings requires that extensive skin lesions "result in a very serious limitation," such as

1  a very serious limitation in the ability to ambulate.  *See* 20 C.F.R. Pt. 404, Subpt. P, App.

2  1, § 8.00.C.1.  Again, Wallace provides evidence that he suffered from skin lesions but

3  does not identify any specific functional limitations, let alone a very serious one.  *See*

4  Dkt. 15 at 3-5.

5       Wallace argues that the Court finding that Wallace's skin condition did not meet a

6  listing at step three would be an improper *post hoc* affirmation based on reasoning the

7  ALJ did not articulate in his decision.  *See* Dkt. 20 at 3.  However, the Court is not

8  powerless to perform harmful error analysis.  *See Molina*, 674 F.3d at 1115 ("harmless

9  error principles apply in the Social Security Act context").  A claimant may not

10  automatically earn a remand by raising an argument on appeal that is unsupported by

11  evidence simply because the ALJ did not address the issue.  Wallace has not met his

12  burden of showing harmful error.

13       Next, Wallace argues that the ALJ erred by failing to find that Wallace had a

14  severe mental impairment.  *See* Dkt. 15 at 6-13.  After analysis of the objective medical

15  evidence and the medical opinions in the record, the ALJ determined that Wallace did not

16  have a severe mental impairment.  *See* AR 646-48.  Specifically, Wallace argues that this

17  finding was in error because the ALJ did not give specific and legitimate reasons for

18  rejecting the opinions of Matthew Comrie, Psy.D.[2]  *See* Dkt. 15 at 11.

19

20       [2] Wallace outlines numerous findings in the medical record that he believes support his
21  position that he has a severe mental impairment, arguing that the ALJ "fail[ed] to acknowledge
    the treatment notes" and "did not properly consider all of the medical evidence."  *See* Dkt. 15 at
    11-12.  However, the ALJ "need not discuss *all* evidence presented" to him.  *Vincent on Behalf*
22  *of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in

ORDER - 7

1   When a physician's opinion is contradicted elsewhere in the record, that opinion

2   can be rejected for "specific and legitimate reasons that are supported by substantial

3   evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). The

4   ALJ gave Dr. Comrie's opinion that Wallace was limited to simple tasks and could have

5   only superficial contact with others little weight because, among other reasons, it was

6   inconsistent with clinical observations and testing performance. *See AR 647.* An ALJ

7   need not accept a physician's opinion if that opinion is inadequately supported by clinical

8   findings or "the record as a whole." *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d

9   1190, 1195 (9th Cir. 2004). As the ALJ noted, the medical record regularly reflected

10  normal cognitive functioning (*see, e.g.*, AR 618, 889, 896, 905, 911, 1000) and social

11  functioning (*see, e.g.*, AR 581, 864, 878, 889, 896, 905). *See AR 647.* Therefore, the

12  ALJ provided a specific and legitimate reason supported by substantial evidence to

13  discount Dr. Comrie's opined limitations. Wallace shows no harmful error in the ALJ's

14  evaluation of Wallace's severe impairments or of their impact on the subsequent steps of

15  the sequential evaluation process.

16  Wallace next argues that the ALJ erred when he relied on Wallace's testimony that

17  he does not have any problems being around others, noting that he "frequently reported

18

---

19  original). The ALJ must only explain why "significant probative evidence has been rejected."

20  *See id.* The ALJ's detailed analysis of the objective evidence and medical opinions regarding
    Wallace's mental impairments meets this standard. *See AR 646-48.* Wallace also states that the

21  ALJ "[i]nexplicably" rejected the opinions of two other physicians but fails to argue why the
    ALJ's stated reasons for discounting those opinions were in error. *See Dkt. 15 at 10; see also*

22  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not
    argued with specificity in briefing will not be addressed).

problems" with irritability, anger, anxiety, and panic.  *See* Dkt. 15 at 11-12.  However, the ALJ did not rely solely on Wallace's testimony to find that Wallace did not have significant social limitations; rather, the ALJ provided an analysis of the full record, including the medical opinions.  *See* AR 646-48.  To the extent that Wallace is arguing that the ALJ should have accepted Wallace's testimony regarding his social limitations, he fails to address and contest the reasons the ALJ provided for discounting Wallace's testimony.  *See* Dkt. 15; *see also Carmickle*, 533 F.3d at 1161 n.2 (issue not argued with specificity in briefing will not be addressed).

Finally, Wallace argues that the ALJ's findings at step two were in error because the ALJ found Wallace to have a severe mental impairment in a previous decision.  *See* Dkt. 15 at 12.  However, the Appeals Council vacated that decision after this Court remanded the case for *de novo* proceedings because the administrative record was incomplete.  *See* AR 747.  Therefore, the previous decision was not binding on the ALJ, and the ALJ did not err by making new findings after the new hearing.

**B.    Medical Evidence**

Wallace argues that the ALJ erred by failing to fully incorporate or to give a sufficient reason to discount the opinion of nonexamining physician Guillermo Rubio, M.D.  *See* Dkt. 15 at 13-15.  The Court disagrees.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  *Id.* at 725.  When a physician's

1  opinion is contradicted elsewhere in the record, that opinion can be rejected for "specific

2  and legitimate reasons that are supported by substantial evidence in the record." *See*

3  *Lester*, 81 F.3d at 830-31.  A treating or examining physician's opinion is "entitled to

4  greater weight than the opinion of a nonexamining physician." *See id*.  A nonexamining

5  physician's opinion may constitute substantial evidence if "it is consistent with other

6  independent evidence in the record." *See id*.

7         The ALJ gave Dr. Rubio's opinion some weight, finding it generally consistent

8  with the medical evidence but ultimately finding Wallace to be even more limited than

9  Dr. Rubio opined.  *See* AR 653.  Still, Wallace argues that the ALJ failed to incorporate

10  into the RFC Dr. Rubio's statement that Wallace may need additional breaks and regular

11  access to a restroom.  *See* Dkt. 15 at 13-15.  The RFC is the most a claimant "can still do

12  despite his or her limitations." *See* SSR 96-8p, 1996 WL 374184, at *2.  An ALJ

13  therefore need not, after review of the entire record, incorporate or address every remark

14  from a medical source that is not an imperative.  *See Carmickle*, 533 F.3d at 1165.  Here,

15  Dr. Rubio recommended that Wallace "may," not "must," require additional breaks and

16  regular access to a restroom.  Therefore, the Court will not disturb the ALJ's resolution of

17  the medical evidence.  *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th

18  Cir. 1999) (finding that determining whether inconsistencies in the medical evidence "are

19  material (or are in fact inconsistencies at all)" falls within the ALJ's responsibility).

20  **C.     The RFC and Step-Five Finding**

21         Wallace argues that the ALJ erred in assessing his RFC and finding at step five

22  that he could perform work available in the national economy because the ALJ did not

1   explain why he found that Wallace's seizures would cause up to six absences per year

2   and not more. *See* Dkt. 15 at 16-17. Wallace cites 11 major seizures in a 17-month

3   period in the record. *See id.* at 16. However, excluding from the count a planned,

4   induced seizure, which would not cause an unscheduled absence, Wallace does not

5   establish that more than six seizures occurred in any 12-month period. *See id.*; *see also*

6   AR 564, 941-43. Therefore, Wallace does not meet his burden of showing harmful error

7   in the RFC. Wallace also argues that he would meet a new listing that was effective

8   September 29, 2016. *See* Dkt. 15 at 16. However, the Commissioner's final decision in

9   this case was issued on May 24, 2016. *See* AR 656.

10                                **VIII.  ORDER**

11           Therefore, it is hereby **ORDERED** that the Commissioner's final decision is

12   **AFFIRMED**.

13           Dated this 16th day of March, 2017.

14

15

16                                        BENJAMIN H. SETTLE
                                          United States District Judge

17

18

19

20

21

22